ROBERT J. WESTGATE and TAMME L. WESTGATE, Defendants BelowA-ppellants,
v.
DEAN E. LAUMBACH and ANN M. LAUMBACH, Plaintiffs Below-Appellees.
No. 480, 2008.
Supreme Court of Delaware.
Submitted: December 22, 2008.
Decided: January 30, 2009.
Before BERGER, JACOBS and RIDGELY, Justices.

ORDER
JACK B. JACOBS, Justice.
This 30th day of January 2009, upon consideration of the appellants' opening brief and the appellees' motion to affirm pursuant to Supreme Court Rule 25(a), it appears to the Court that:
(1) The defendants-appellants, Robert J. Westgate and Tamme L. Westgate (the "Westgates"), filed an appeal from the Court of Chancery's August 19, 2008 memorandum opinion, its August 27, 2008 order, and its September 8, 2008 final order, which granted the applications for injunctive relief and attorney's fees of the plaintiffs-appellees, Dean E. Laumbach and Ann M. Laumbach (the "Laumbachs"). The Laumbachs have moved to affirm the judgment of the Court of Chancery on the ground that it is manifest on the face of the opening brief that the appeal is without merit. We agree and AFFIRM.
(2) In September 2006, the Laumbachs filed suit against their next-door neighbors, the Westgates, to enforce compliance with certain restrictive covenants governing Gardenside, their residential subdivision in Smyrna, Delaware. Following a one-day trial in the Court of Chancery on July 11, 2008, the Vice Chancellor made the following findings.
(3) In June 2005, the Westgates erected a 25-foot wide, 38-foot long, and 13-foot high military-style Quonset hut made of plywood and corrugated steel on a concrete foundation in the rear of their property. The purpose of the structure was to refurbish classic cars.[1] The Westgates parked a 20-foot long cargo trailer used for transporting cars to the Westgate property near the Quonset hut. The Westgates also paved asphalt over their grass side yard, resulting in a driveway approximately 30 feet in width abutting the Westgates' common property line with the Laumbachs. The purpose of the enlarged driveway was to enable cars to be driven around the Westgates' two-car garage to the Quonset hut for repair. The Westgates stored metal car parts near the Quonset hut and kept pieces of metal and car parts on the side of a shed that faces the Laumbach property.
(4) At various times, Mr. Westgate used an industrial car lift, sandblasting equipment, a compressor for spray painting, a pressure washer, and welding equipment to work on his cars. In addition to the noise caused by these activities, fumes from welding or spray painting would often drift over onto the Laumbach property. At trial, several neighborhood residents testified that Mr. Westgate had a history of verbally abusing his neighbors and that the Westgate property is an embarrassment to their community. Photographs of the property that were introduced into evidence at trial confirmed this perception.
(5) The community in which the Westgates and the Laumbachs live has a Declaration of Covenants (the "covenants"), which provide for private enforcement of the restrictions contained therein. The covenants include size and height restrictions for detached structures on lots within the subdivision. The covenants require that the consent of the "declarant" be obtained prior to any such structure being erected or any improvement being installed.[2] The covenants also prohibit the parking of any oversized vehicles on lots within the subdivision. The covenants, finally, require property owners to keep their lots clean and free of debris and prohibit any activity constituting a nuisance.[3]
(6) As ultimately conceded by the Westgates, the Quonset hut clearly violated the covenants. Moreover, the Vice Chancellor found that the foundation of the Quonset hut and the extended portion of the Westgates' driveway, which he estimated would fit nearly a dozen large vehicles, as well as the 20-foot long cargo trailer, violated those portions of the covenants establishing size and height restrictions for structures and improvements, prohibiting the parking of oversized vehicles, and requiring the developer's prior consent. The Vice Chancellor also found that Mr. Westgate's welding, sandblasting and spray painting, as well as the debris allowed to collect on the Westgate property, constituted a nuisance in violation of the covenants. The Vice Chancellor's August 27, 2008 implementing order requires the Westgates to remove the non-conforming structures, vehicles and debris from their property and cease all activities constituting a nuisance.[4] Finally, the Vice Chancellor found that, under the language of the covenants, the Laumbachs were entitled to an award of attorney's fees and awarded those fees in its September 8, 2008 final order.
(7) The Westgates' appeal is based upon their belief that they are being singled out for punishment and that the Vice Chancellor's decision is based upon a misinterpretation of the covenants. To the contrary, the Vice Chancellor's decision is fully supported by the language contained in the covenants as well as Delaware law.[5] As such, we find no error or abuse of discretion in his August 19, 2008 memorandum opinion, his August 27, 2008 implementing order or his September 8, 2008 final order. It is manifest on the face of the opening brief that this appeal is without merit. We conclude that the Court of Chancery's judgment should be affirmed on the basis of its well-reasoned decision dated August 19, 2008.
NOW, THEREFORE, IT IS ORDERED that, pursuant to Supreme. Court Rule 25(a), the motion to affirm is GRANTED. The judgment of the Court of Chancery is AFFIRMED.
NOTES
[1] The Quonset hut was removed several weeks after trial ended, but the 950 square foot concrete foundation remains.
[2] Because the subdivision does not have a homeowners' association, the "declarant" is the developer, Cantwell Development, LLC.
[3] While the Westgates argued that any violations of the covenants were waived and abandoned because of violations of the covenants by the Laumbachs and other neighborhood property owners, the Vice-Chancellor specifically ruled that the de minimus nature of any such violations would not prevent the covenants from being enforced against the Westgates.
[4] While Mr. Westgate has not recently engaged in repairing cars on his property, the Vice-Chancellor enjoined him from doing so in the future.
[5] Brookside Community, Inc. v. Williams, 290 A.2d 678, 680-682 (Del. Ch. 1972), aff'd, Williams v. Brookside Community, Inc., 306 A.2d 711 (Del. Supr. 1973).